# IN THE SUPREME COURT OF IOWA

No. 15–0672

Filed September 11, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**BLAKE D. LUBINUS,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports that an attorney violated several rules of professional conduct and recommends a public reprimand. **LICENSE SUSPENDED.**

Charles L. Harrington and Amanda K. Robinson, Des Moines, for complainant.

Michael A. Horn of Kuntz, Laughlin & Horn, Des Moines, for respondent.

**MANSFIELD, Justice.**

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.11. The Iowa Supreme Court Attorney Disciplinary Board charged attorney Blake D. Lubinus with violating several of our ethical rules by failing to deposit an advance fee into his trust account, transferring unearned fees out of his trust account, and failing to furnish contemporaneous accountings to his clients upon making trust account withdrawals. The parties stipulated as to the underlying facts. The stipulation also addressed the rule violations that had occurred and the appropriate sanction for those violations. The commission accepted the parties' stipulation as to facts and rule violations but recommended a public reprimand for Lubinus rather than the proposed thirty-day suspension.

Upon our review, we determine that all the alleged ethical violations took place. However, given the nature and extent of those violations, we believe a reprimand is an insufficient sanction and suspend Lubinus's license to practice law in Iowa for thirty days, as originally proposed by the parties.

### I. Background Facts and Proceedings.

Lubinus was admitted to the Iowa bar in 2010. At the time of the alleged ethical violations, he maintained a solo practice in Polk County. Lubinus is engaged in the general practice of law with a focus on commercial collections, criminal defense, and juvenile law.

In August 2012, Lubinus was retained to represent an individual charged with operating while intoxicated (OWI). He agreed to take the case for a $1500 flat fee. Before Lubinus had received any funds from the client, he withdrew $400 from his operating account to cover the

client's bond and then transferred $400 from his office trust account to his operating account. The bond ended up being only $180, and the client paid Lubinus $1680 for both the flat fee and the bond. Lubinus deposited the entire $1680 when received from the client into his operating account. At least initially, Lubinus did not restore the $400 to his trust account.

Lubinus handles collections cases on a contingent-fee basis, usually receiving between twenty and twenty-five percent of the amount collected. In this area of practice, Lubinus's law firm uses a computerized accounting system that processes payments for clients and calculates the contingent fees he is entitled to withdraw from the trust account. In June 2013, Lubinus deposited $20,379.47 total into his trust account. In July, his deposits totaled $30,879.42. During June and July, Lubinus made transfers totaling $6600 from his trust account to either his office operating account or his personal bank account. Lubinus acknowledges these funds had not yet been earned, at least in part because Lubinus had not yet completed the work for his clients by providing them with their respective shares of the collection payment. These transfers were made electronically, and Lubinus did not initially let his support staff know about them, nor did he provide contemporaneous notice to his clients.

These transfers caused accounting errors, problems with monthly reconciliations, and other issues with Lubinus's trust account. Lubinus restored $6100 to the trust account in late July and subsequently placed another $500 in escrow when he realized he had not restored the full $6600.

Lubinus reported his own actions to the Board. In an affidavit, Lubinus explained that when the premature withdrawals of $6600

occurred, "I was at a financial low point in my career. I felt desperate and did not see any way out of my short term money problems."

Lubinus has ceased making electronic transfers out of the trust account, so all transactions from the trust account are now handled by check only. Lubinus has also taken on a law partner. The parties agree that no client lost funds as a result of Lubinus's actions and that Lubinus has repaid all funds to his trust account that were improperly transferred.

The Board filed a complaint with the grievance commission on October 13, 2014, alleging Lubinus had violated Iowa Rules of Professional Conduct 32:1.15(a), (c), and (f) and Iowa Court Rules 45.2(3)(*a*)(9) and 45.7(3). On October 31, Lubinus filed an answer admitting essentially all of the factual allegations and violations alleged in the complaint. The parties submitted a joint stipulation of facts, legal violations, and proposed sanction on March 31, 2015. Therein, the parties agreed to waive a formal hearing.

On April 16, the commission adopted the parties' factual statements and agreed with the stipulated rule violations. It concluded, however, that a lesser sanction was appropriate. Its report explained as follows:

> In reaching its conclusion, the Commission considers several mitigating factors. Respondent self-reported his misconduct to the Board and has cooperated fully during the proceedings. Respondent admitted to the violations in an affidavit provided to the Board and dated February 25, 2014, and in an Answer filed with the Commission on October 31, 2014. Respondent has instituted procedures to prevent similar violations in the future. Respondent is relatively new to the practice of law, having been admitted in 2010, and has no previous disciplinary complaints. No clients were harmed or prejudiced as a result of Respondent's actions. Respondent has repaid to his trust account all funds that were improperly transferred. The violations were isolated, having taken place in June and July 2013 and August 2012.

Based on these mitigating factors, the commission found Lubinus's case distinguishable from other cases involving trust account violations that had resulted in suspensions. It therefore recommended that Lubinus receive a public reprimand. The matter is now before us for our independent review. In their written submissions to us regarding sanction, the Board continues to argue for a thirty-day suspension while Lubinus now urges us to accept the commission's recommendation of a public reprimand.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.11(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 201 (Iowa 2015). The Board has the burden of proving the attorney's misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 360 (Iowa 2015). "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crum*, 861 N.W.2d 595, 599 (Iowa 2015) (internal quotation marks omitted).

Stipulations of fact are controlling, but stipulations as to violations and appropriate sanctions do not bind us. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 335 (Iowa 2015). We give respectful consideration to the commission's recommendations but are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 217 (Iowa 2015).

## III. Analysis.

### A. Review of Alleged Ethical Violations.

1. *Iowa Rule of Professional Conduct 32:1.15(a).* Rule 32:1.15(a) provides in part, "A lawyer shall hold property of clients . . . that is in a

lawyer's possession in connection with a representation separate from the lawyer's own property." Iowa R. Prof'l Conduct 32:1.15(a). We find Lubinus violated rule 32:1.15(a) because he failed to deposit the advance fee he received on the OWI matter into his trust account and instead put it into an account of his own. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 655 (Iowa 2013) (determining that a failure to deposit advance fees into a trust account violates rule 32:1.15(a)).

2. *Iowa Rule of Professional Conduct 32:1.15(c).* According to rule 32:1.15(c), "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Iowa R. Prof'l Conduct 32:1.15(c). We determine Lubinus violated this rule by prematurely depositing the entire OWI advance fee into his operating account and by transferring funds out of his trust account before he had earned them with respect to his commercial collections cases.

3. *Iowa Rule of Professional Conduct 32:1.15(f).* Rule 32:1.15(f) provides that "[a]ll client trust accounts shall be governed by chapter 45 of the Iowa Court Rules." *Id.* r. 32:1.15(f). Because we find violations of chapter 45 below, we agree Lubinus's conduct violated rule 32:1.15(f).

4. *Iowa Court Rule 45.2(3)(a)(9).* A lawyer is required to maintain "[c]opies of monthly trial balances and monthly reconciliations of the client trust accounts maintained by the lawyer." Iowa Ct. R. 45.2(3)(*a*)(9). Based on Lubinus's stipulation that his improper withdrawals and transfers in June and July 2013 undermined his office's ability to maintain accurate records of his trust account, we find his conduct violated rule 45.2(3)(*a*)(9).

5. *Iowa Court Rule 45.7(3).* "A lawyer must deposit advance fee and expense payments from a client into the trust account and may withdraw such payments only as the fee is earned or the expense is incurred." *Id.* r. 45.7(3). Lubinus violated this rule by prematurely shifting unearned funds out of his trust account and by depositing the entire OWI advance fee into his operating account.

6. *Iowa Court Rule 45.7(4).* This rule provides:

> A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal.

*Id.* r. 45.7(4). We conclude Lubinus violated this rule by failing to notify any of his clients when he made transfers from his trust account to his personal and operating accounts in June and July 2013.

**B. Consideration of Appropriate Sanction.** In crafting the appropriate sanction, we take into account "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 699 (Iowa 2014) (alteration in original) (internal quotation marks omitted). "We consider mitigating and aggravating circumstances as we calibrate the sanction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 495 (Iowa 2014). We also try to achieve consistency with prior cases. *Id.*

Our sanctions for trust account violations have ranged from a public reprimand to license revocation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 588–89 (Iowa 2011) (collecting cases). For isolated and minor violations, we have generally

decided a public reprimand was an appropriate sanction. *See id.* at 588. For example, in *Iowa Supreme Court Attorney Disciplinary Board v. Piazza*, we publicly reprimanded an attorney for failing to deposit an advance fee into his trust account and provide an accounting to his client in violation of our prior ethical rules. 756 N.W.2d 690, 697–98, 700 (Iowa 2008). In declining to impose a suspension, we took into account the attorney's lack of prior disciplinary history and the fact he had since reformed his accounting practices. *Id.* at 700. Similarly, in *Iowa Supreme Court Attorney Disciplinary Board v. Denton*, we publicly reprimanded an attorney who failed to deposit one client's advance fee into a trust account. 814 N.W.2d 548, 550–51 (Iowa 2012). The attorney had only recently begun to practice immigration law in Iowa and had not yet opened a trust account for legal fees. *Id.* at 549. In imposing a reprimand, we noted that he had no prior ethical violations and had since established a trust account to avoid future violations. *Id.* at 551.

Likewise, when an attorney failed to provide written notice to a client upon withdrawing a retainer from a trust account, and also withdrew the retainer before it had been fully earned, we issued a public reprimand. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sobel*, 779 N.W.2d 782, 789–90 (Iowa 2010). An attorney's commingling of his own funds and client funds in his trust account in order to hide assets from the Internal Revenue Service also warranted a public reprimand. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf*, 588 N.W.2d 126, 126–27 (Iowa 1999). We noted the case presented a close call "at the precise boundary between suspension and public reprimand," but ultimately declined to impose a suspension due to the fact "th[e] episode [wa]s an aberration, wholly out of plumb with [the attorney]'s many years of practice which appear to have been honorable." *Id.*

When an attorney's minor trust account violations are the result of sloppiness or lack of oversight, we have levied a public reprimand rather than a suspension. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Apland*, we characterized the attorney's failure to deposit an advance fee, provide an accounting, and respond to the ethics commission as the result of "lackadaisical bookkeeping practices" and imposed a public reprimand. 577 N.W.2d 50, 56, 59–60 (Iowa 1998). In *Iowa Supreme Board of Professional Ethics & Conduct v. Herrera*, we imposed a public reprimand on an attorney for commingling funds and failing to keep adequate records in violation of our prior ethical rules when an office employee was able to mismanage funds due to the attorney's lack of oversight. 560 N.W.2d 592, 594–95 (Iowa 1997). We noted there was significant evidence that the office employee had intentionally mismanaged the attorney's funds because she resented him. *Id.* at 595. We also took into account the attorney's "honesty, his forthright responses, and his move to correct his operation" as mitigating factors weighing in favor of a public reprimand rather than a suspension. *Id.*

On the other hand, when an attorney has committed multiple or more systematic trust account violations, we have imposed suspensions, often of thirty days. For example, in *Iowa Supreme Court Attorney Disciplinary Board v. Boles*, we imposed a thirty-day suspension for the attorney's "flagrant, multiyear disregard for the billing and accounting requirements of our profession." 808 N.W.2d 431, 441, 443 (Iowa 2012). The attorney had prematurely withdrawn fees, delayed giving accountings to his clients, and failed to promptly return unearned fees with respect to four separate clients. *Id.* at 441–42. We noted the "pattern of misconduct" as an aggravating factor, but also considered the

attorney's cooperation with the Board, reform of his accounting practices, and extensive volunteer work as mitigating factors. *Id.* at 442.

We also levied a thirty-day suspension on an attorney whose conduct demonstrated a "systematic failure to maintain adequate accounting records." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 422 (Iowa 2012). An audit had revealed the attorney "failed to keep on any kind of a regular basis a list of clients with the balances that each client had in their trust account." *Id.* at 420 (internal quotation marks omitted). We took into account that the attorney had no prior disciplinary history and no clients were harmed, but noted that because the attorney kept no records, "we have no way of knowing whether the trust account violation . . . was an isolated occurrence or a more frequent event." *Id.* at 422.

Recently, we suspended for thirty days the license of an attorney who had failed to deposit client funds into her trust account, placed large amounts of personal funds in her trust account, failed to keep proper records, and failed to provide clients with contemporaneous accountings when making trust account withdrawals. *Eslick*, 859 N.W.2d at 201–03. The attorney had received one prior public reprimand for neglecting client matters, but we noted as mitigating factors that she had started to receive treatment for her attention deficit disorder, she had cooperated fully with the Board, and her conduct did not harm any clients. *Id.* at 202–03.

More serious trust account violations have led to suspensions of longer than thirty days. For example, when an attorney with a prior record of discipline completely disregarded the rules governing trust accounts over a four-year period, thereby resulting in a significant shortage in his trust account and necessitating the appointment of a

trustee, we imposed a three-month suspension, even though a prior interim suspension was considered as a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell,* 830 N.W.2d 355, 356–57, 359–60 (Iowa 2013); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris,* 847 N.W.2d 428, 436–37 (Iowa 2014) (suspending an attorney for six months where the attorney's "record-keeping and management deficits were severe and they persisted over a long period of time even after the Client Security Commission intervened with an audit and provided information that should have facilitated compliance with the applicable rules"); *Ricklefs,* 844 N.W.2d at 700, 702 (imposing a three-month suspension on an attorney for repeatedly mishandling his trust account, commingling funds, failing to maintain proper records, misrepresenting that he was following the trust account rules, and failing to comply with the rules even after two audits).

Likewise, when an attorney's trust account violations are coupled with other ethical missteps, we have imposed more severe sanctions. For example, in *Iowa Supreme Court Attorney Disciplinary Board v. Ackerman,* we suspended for ninety days the license of an attorney who committed numerous violations of our ethical rules with regard to two probate cases. 786 N.W.2d 491, 493 n.1, 495–96, 498 (Iowa 2010). In addition to taking premature fees from one of the estates, the attorney had also neglected the two estates, resulting in harm to his clients, and made misrepresentations to the court. *Id.* at 495–97; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mendez,* 855 N.W.2d 156, 160, 173–75 (Iowa 2014) (enjoining a California attorney from practicing law in Iowa for sixty days for "flout[ing] our trust account rules, . . . in combination with his other ethical breaches"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey,* 814 N.W.2d 250, 257–59 (Iowa 2012) (imposing a one-year

suspension on an attorney for committing trust account violations and practicing while suspended); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 630, 632, 634–35 (Iowa 2009) (imposing an eighteen-month suspension on an attorney for serious trust account violations accompanied by the revelation of confidential client information, neglect, and failure to respond to the Board's inquiry).

Finally, "an attorney crosses an important line when he or she misappropriates or converts client funds without a colorable future claim to those funds." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 182 (Iowa 2014) (internal quotation marks omitted). When an attorney commits theft by converting a client's property without a colorable future claim, revocation of the attorney's license is the appropriate sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 232 (Iowa 2014). The burden is on the Board to prove theft, but the attorney must come forward with evidence of a colorable future claim to the funds. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cepican*, 861 N.W.2d 841, 844 (Iowa 2015); *Carter*, 847 N.W.2d at 232–33.

Our review of the present case reveals a number of mitigating factors. Lubinus has no prior disciplinary history. *See Kersenbrock*, 821 N.W.2d at 422 (observing that a lack of disciplinary history can be a mitigating factor). Furthermore, he was forthright and cooperative, self-reporting his trust account violations. *See Boles*, 808 N.W.2d at 442 (noting cooperation with the Board can be a mitigating factor). Importantly, none of Lubinus's clients were harmed by his improper deposits and transfers of trust account funds. *See id.* (considering lack of harm to clients as a mitigating factor). Lubinus also has taken proactive corrective measures to ensure he commits no further trust

account violations. *See Herrera*, 560 N.W.2d at 595 (crediting an attorney's efforts in responding appropriately to ethical violation).

The Board has not alleged, and we do not find, that Lubinus has misappropriated client funds such that revocation is warranted. The parties' factual stipulation is not particularly detailed. Nevertheless, it appears that as debt collection funds came into the trust account, Lubinus withdrew some of those funds, but not in excess of what would have been his share of those funds after proper calculations and disbursements had been performed. The OWI incident is somewhat more troubling. There, Lubinus withdrew $400 from the trust account "to cover this client's bond." Later, he received other funds from the client and no longer needed additional money for the bond—yet he did not restore the $400 to the trust account. Still, we cannot find that Lubinus intentionally misappropriated funds; at most, he failed to pay them back when it turned out the client didn't need them, and the record is not even clear whether the retention of the $400 was intentional or an inadvertent error.

At the same time, we do not share the commission's view that this is simply a *Piazza*-type case. Lubinus does not argue that he thought he had earned the withdrawn funds, *cf. Piazza*, 756 N.W.2d at 697–98, or that his case merely involved sloppy or lazy bookkeeping, *cf. Apland*, 577 N.W.2d at 60. Rather, Lubinus admits he *knowingly* removed unearned funds from his trust account prematurely because he was in financial difficulty.

Thus, we concur with what the parties agreed to in their stipulation, namely, that the respondent's conduct is "more serious than that described in" *Piazza* and, rather, is "similar" to the conduct in *Eslick,* where we imposed a thirty-day suspension. As in *Eslick,* personal

financial difficulties led to a situation where the attorney was not following proper trust account practices. *See Eslick*, 859 N.W.2d at 200–02. These inappropriate practices included the withdrawal of client funds before they had been earned. *See id.* at 200–01. Like the attorney in *Eslick*, Lubinus had a series of incidents involving misuse of his trust account rather than a one-time aberration. *See id.* at 200. Similarly, Lubinus's violations related to more than just one client's funds. *See id.*; *see also Boles*, 808 N.W.2d at 441–42. As in *Eslick*, mitigating factors include the attorney's remorse and full cooperation, and the fact that no clients were harmed. *See Eslick*, 859 N.W.2d at 202–03. Both Eslick and Lubinus were solo practitioners who were relatively new to the practice.

It is true, as noted by the commission, that Eslick's trust account violations extended over a longer time period and Eslick had a prior reprimand (although not for a trust account violation). *See id.* Still, no two attorney disciplinary cases are identical. As we have observed, "There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ryan*, 863 N.W.2d 20, 30 (Iowa 2015) (internal quotation marks omitted). In our view, Lubinus's intentional short-cutting of trust account requirements to solve a short-term financial problem brings his case within the suspension category.

At the same time, Lubinus's actions do not warrant a longer suspension than thirty days. He did not demonstrate a total, long-term disregard for the trust account rules, *cf. Morris*, 847 N.W.2d at 436–37; *Powell*, 830 N.W.2d at 357, 359–60, nor were his trust account problems

accompanied by other, more serious violations, *cf. McCuskey*, 814 N.W.2d at 257–59; *Ackerman*, 786 N.W.2d at 495–97; *Plumb*, 766 N.W.2d at 634–35, nor had he been given a "second chance" after a prior deficient audit, *cf. Ricklefs*, 844 N.W.2d at 702.

But to reiterate, unlike certain cases in which we have previously found a public reprimand to be appropriate, Lubinus committed more than a single, isolated trust account violation. *Cf. Denton*, 814 N.W.2d at 550–51; *Sobel*, 779 N.W.2d at 789–90; *Piazza*, 756 N.W.2d at 697–98, 700. And Lubinus's accounting errors were not the result of mere oversight or lack of diligence. *Cf. Apland*, 577 N.W.2d at 60; *Herrera*, 560 N.W.2d at 595. Rather, Lubinus admitted he was "at a financial low point in [his] career" and he knowingly transferred trust account funds prematurely to address his "short term money problems."

## IV. Conclusion.

We suspend Lubinus's license to practice law in this state with no possibility of reinstatement for thirty days from the date of the filing of this opinion. This suspension shall apply to all facets of the practice of law. *See* Iowa Ct. R. 35.13(3). Lubinus must comply with all the requirements of Iowa Court Rule 35.23, including notifying his clients of his suspension. Unless the Board files an objection, Lubinus will be automatically reinstated after the thirty-day period of suspension on the condition that all costs have been paid. *See id.* r. 35.13(2). The costs of this proceeding are assessed against Lubinus pursuant to Iowa Court Rule 35.27(1).

**LICENSE SUSPENDED.**

All justices concur except Hecht, J., who takes no part.