# IN THE SUPREME COURT OF IOWA

No. 19–1320

Filed January 17, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**T.J. HIER,**

Respondent.

_____

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends public reprimand for violation of ethical rules. **LICENSE SUSPENDED.**

Tara van Brederode and Crystal W. Rink, Des Moines, for complainant.

David L. Brown and Tyler R. Smith of Hansen, McClintock & Riley, Des Moines, for respondent.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against attorney T.J. Hier charging her with violating Iowa disciplinary rules in connection with her handling of a disputed attorney fee payment in what she aptly describes as a "hotly contested, emotional family law matter." A division of the Iowa Supreme Court Grievance Commission found that Hier violated several rules but that the Board failed to prove several other rule violations. The commission recommends a public reprimand. The Board seeks a suspension. Hier requests a private admonition. We agree with the commission's findings as to Hier's rule violations, but we disagree with the commission's recommended sanction. In light of Hier's prior disciplinary history, we suspend her license to practice law for thirty days.

## I. Background Facts and Proceedings.

Hier obtained her Iowa law license in 1997. She began her career in private practice in Newton, and she served as an assistant county attorney in Jasper County. She had an inactive law license from 2001 to 2005. She resumed practicing law solo out of her home in Baxter in 2006. She now practices in the areas of criminal, juvenile, and family law. Hier is under contract with the state public defender's office for criminal and juvenile court appointments. She represents many clients pro bono and serves other low-income clients. She volunteers as a mock trial coach and for domestic violence victim groups, her church, and the Special Olympics. Hier is legally blind, having lived nearly her entire life with Stargardt disease, a rare macular degeneration that requires her to use magnification techniques and devices to read documents.

Our court has previously disciplined Hier five times. We publicly reprimanded her in 2009. We temporarily suspended her law license in

2012 for failure to respond to the Board. We publicly reprimanded her again later that year and again in 2014. Most recently, in December of 2017, we disciplined Hier for trust account violations after an audit by the Client Security Commission determined that she failed to maintain written monthly reconciliations, lacked a journal of receipts and disbursements, lacked documentation of electronic transfers, and failed to properly maintain client ledger subaccounts. We publicly reprimanded her for violating Iowa Rules of Professional Conduct 32:1.15(a) and (f) and Iowa Court Rule 45.2. Our 2017 public reprimand preceded some of Hier's conduct at issue in this opinion.

Hier represented Amanda Rothfus against Edwin Van Dorn, a former boyfriend with whom Rothfus had two children. In late 2016, Hier, on behalf of Rothfus, filed an "Application for Rule to Show Cause and an Application to Modify Custody, Visitation, and Child Support." The applications alleged Van Dorn was willfully violating the visitation schedule in the decree and was in arrears paying child support. Attorney Jeff Carter represented Van Dorn. Those matters were pending when Rothfus was deposed on August 11, 2017. The parties halted the deposition to negotiate a settlement agreement to resolve the pending litigation and recited the terms into the record transcribed by the court reporter. Rothfus agreed to dismiss the contempt action against Van Dorn in return for his payment of $1032.42 in child support and his payment of $750 towards Hier's attorney fees. According to Carter, Hier told Van Dorn to make the $750 check out to her trust account. The same day, Van Dorn delivered his check for $1032.42 to the Iowa Child Support Recovery Unit and delivered his $750 check payable to Hier's client trust account (CTA).

Rather than deposit the check in her CTA, Hier deposited the check into her firm's general account and credited the payment against Rothfus's outstanding balance. Hier later testified she did not remember telling Van Dorn to make the check payable to her CTA, but he did so.

Carter agreed to draft the stipulation reflecting the parties' agreement, but he did not send the draft to Hier until a month later. During the intervening weeks, Van Dorn failed to remain current on his child support payments and failed to exercise visitation. Rothfus declined to sign the stipulation and insisted on proceeding to trial, contending that Van Dorn had misrepresented his work schedule, which was the basis for the custody modification. In response, on September 28, Carter filed a motion to enforce the settlement agreement that requested the stipulation be signed or the $750 returned. Hier filed a resistance asserting she need not return the $750 because Van Dorn's misrepresentations excused Rothfus from signing the stipulation.

On November 9, the parties appeared before Judge Rickers for a hearing on the motion to enforce the settlement. The hearing was continued at the request of the children's guardian ad litem who had not received timely notice. Judge Rickers met with Hier and Carter in chambers and off the record discussed the dispute over Van Dorn's $750 payment to Hier. Hier offered to place the $750 payment in her CTA. Hier later testified that

> Mr. Carter was highly agitated and so I said, "Jeff, if it will make you feel better I can put it in my trust account." And Judge Rickers said, "Well, I'm not going to order you to do that." And I said -- I said, "Well, I will offer to do that." And then there was nothing further said about it.

Judge Rickers later testified he lacked a specific recollection of that in-chambers discussion:

> Q. Judge Rickers, Ms. Hier testified during her testimony that you said, "I'm not going to order you to return the fees." That was referring to a statement that you supposedly made on November 9, 2017. Do you recall making that statement? A: I do not specifically recall making that statement. . . . I said, "I don't recall making it." I'm not saying I didn't say it either. I just don't recall it. If I did make that statement, it was in the context of that the $750 had to be placed in Ms. Hier's trust account.

In any event, Judge Rickers promptly issued a written order continuing the hearing until January 26, 2018. The order stated,

> Petitioner paid the Respondent's attorney $750.00 in attorney fees in contemplation of consummation of the settlement agreement. Respondent's attorney has agreed to immediately transfer $750 to her client trust account pending resolution of the motion. Disposition of the attorney fees held in trust shall depend upon final resolution of the pending motion.

Despite this court order, Hier never deposited the $750 into her CTA, nor did she inform the court that she neglected to do so. Hier testified that she did not read the order and thus was unaware of its terms.

On January 25, the day before the scheduled hearing, Carter withdrew his motion to enforce the settlement agreement. He emailed Hier to inform her, but he stated that he expected her to return the $750 to Van Dorn as "that payment was made solely for the universal settlement that your client pulled out of." Hier replied, stating that she would put the check in the mail that day and that she expected the check to arrive by January 29. Later that day, Hier emailed Carter to ask whether she should make the check payable to Van Dorn or to Carter's law office. Carter received the email, but the record does not state whether Carter responded. Hier did not mail the check.

Carter emailed Hier again on March 6. This email stated, "We are still waiting for you to return my client's $750. I have been instructed to file something with the Court if we do not get it immediately. Please reply

ASAP[.]" Hier did not reply to this email. Carter emailed Hier again on March 27, stating,

> Are you going to do anything on this? You told us repeatedly you would return these funds. My client is continuing to threaten his own action as well as instruct me to file something as well. Please show the courtesy of a reply to this email.

Hier replied by email within the hour, stating she had discussed the matter with Rothfus and that they believed that "at least a portion of the amount should be attributed to resolution of the contempt action against Mr. Van Dorn." Hier also suggested the payment issue be addressed at trial.

> Hier mailed Carter a letter dated March 27 stating,

> Against my better judgment, I am returning ½ of the $750 ($375) to you for the payment made by your client at depositions. Although my client has decided not to follow through with the custody/visitation issue, we did resolve the contempt action. This seems to me to be a fair resolution of our difference of opinion regarding this matter.

Hier included a check to Carter for $375 from her law office account.

> The parties went to trial on May 31. The court issued its ruling on the modification on June 6 as follows:

> Petitioner paid $750 to [Hier] in connection with settlement negotiations which ultimately failed. [Hier] has returned $375 of that payment, but claims she was entitled to keep the remainder as attorney fees. The Petitioner owes no attorney fees to [Hier] unless ordered by the court as a part of the proceedings, or under a contractual obligation. It is obvious that there was no contract entered into by these parties, and the court has previously entered no order regarding attorney fees. The court does find that in connection with this modification action, the Petitioner shall pay Respondent, as attorney fees, the sum of $1000, and the $375 previously retained by [Hier] shall be credited against that amount.

Van Dorn filed his complaint with the Board alleging Hier's mishandling of his $750 payment. Ultimately, the Board charged Hier with violating

Iowa Rules of Professional Conduct 32:1.15(a), (d), (e), and (f); 32:3.3(a)(1); and Iowa Court Rules 45.1 and 45.2(2). On May 2, 2019, the commission conducted an evidentiary hearing with testimony from Carter, Hier, and Judge Rickers. The commission found Hier violated Iowa Rules of Professional Conduct 32:1.15(a), (e), and (f); and Iowa Court Rule 45.1. It found the Board failed to prove violations of the remaining rules.

The commission recommended that Hier be given a public reprimand, reciting as mitigating factors Hier's contract with the state public defender's office, her pro bono work, charitable contributions and community service, Judge Ricker's testimony that he considered Hier to be a truthful and good lawyer, and Rothfus's satisfaction with Hier's representation. The commission considered Hier's prior disciplinary history as an aggravating factor. In statements to our court, the Board requests a suspension while Hier proposes a private admonition.

## II. Scope of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 188 (Iowa 2015). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 138 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 634–35 (Iowa 2015)). While "[w]e give the commission's findings and recommendations respectful consideration, . . . we are not bound by them. *Id.* (quoting *Weiland*, 862 N.W.2d at 635).

## III. Ethical Violations.

"[W]e approach with caution ethics complaints initiated by a litigation adversary." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ouderkirk*,

845 N.W.2d 31, 40 (Iowa 2014). Based on our de novo review of the record, we agree with the commission that Hier violated Iowa Rule of Professional Conduct 32:1.15(a), (e), and (f) and Iowa Court Rule 45.1, and that the Board failed to prove the remaining charges by a convincing preponderance of the evidence.

**A. Iowa Rule of Professional Conduct 32:1.15(a).** Iowa Rule of Professional Conduct 32:1.15(a) states, "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account." Comment 1 elaborates, "All property that is the property of clients or third persons . . . must be kept separate from the lawyer's business and personal property and, if monies, in one or more trust accounts." Iowa R. Prof'l Conduct 32:1.15 cmt. [1]. "The common theme running through Rule [32:1.15] and related court rules is that funds and property belonging to others must be kept scrupulously separate from the lawyer's own funds and property." 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series:™ Lawyer and Judicial Ethics* § 5:15(b) author's cmt., at 517–18 (2019).

Van Dorn paid $750 by check payable to Hier's CTA on August 11, 2017, as part of the parties' oral settlement agreement. Hier admittedly deposited the $750 into her firm's general account rather than her CTA. Hier should have deposited the $750 into her CTA until the written stipulation was executed and approved by the court. *See In re Marriage of Udelhofen*, 538 N.W.2d 308, 310 (Iowa Ct. App. 1995) (recognizing that a stipulation in a family law case "becomes final when it is accepted and approved by the court"); *see also In re Marriage of Jones*, 653 N.W.2d 589, 593–94 (Iowa 2002) ("[T]he parties' stipulation is not binding on the court, . . . [and] the court has the authority to reject the stipulation. . . . The

decree, not the stipulation, determines what rights the parties have." (Citations omitted.)). The settlement broke down, and Judge Rickers ultimately ordered Hier to transfer the funds to her CTA, which she failed to do.

We reject Hier's claim that the $750 was hers to keep upon receipt as a fee payment in settlement of the contempt action. Hier never dismissed the contempt action, which was submitted the following year for hearing with the modification action. Nor is Hier exonerated by the fact the district court later ordered Van Dorn to pay a larger amount ($1000) toward the fees Rothfus owed Hier. The $750 belonged in Hier's CTA until the dispute was finally resolved by the court. We determine that Hier violated rule 32:1.15(a).

**B. Iowa Court Rule 45.1 and Iowa Rule of Professional Conduct 32:1.15(f).** For the same reasons, we determine that Hier violated Iowa Court Rule 45.1 and Iowa Rule of Professional Conduct 32:1.15(f). Rule 45.1 states,

> Funds a lawyer receives from clients or third persons for matters arising out of the practice of law in Iowa must be deposited in one or more identifiable interest-bearing trust accounts at a financial institution with a branch geographically located in Iowa.

Iowa Ct. R. 45.1. Because Hier placed funds that arose out of the practice of law that were owned by a third person into her firm account rather than her CTA, she violated rule 45.1. Hier's violation of rule 45.1 in turn constitutes a violation of Iowa Rule of Professional Conduct 32:1.15(f), which states, "All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules." *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus,* 869 N.W.2d 546, 549 (Iowa 2015) (holding that a violation of chapter 45 constitutes a violation of rule 32:1.15(f)).

**C. Iowa Rule of Professional Conduct 32:1.15(e).** The commission also found that Hier violated Iowa Rule of Professional Conduct 32:1.15(e). This rule provides,

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

Iowa R. Prof'l Conduct 32:1.15(e). Van Dorn demanded return of the $750 when the settlement broke down, and Hier acknowledged the ongoing dispute when she later returned half that amount. Hier was obligated to keep the balance of the disputed funds in her CTA. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 181–82 (Iowa 2013) (stating rule 32:1.15(e) requires lawyers to keep "the disputed portion of the funds . . . in a trust account" until the dispute is resolved (quoting Iowa R. Prof'l Conduct 32:1.15 cmt. [3])).

Hier argues that Van Dorn never had any *valid* claim to the $750, and thus, she did not violate the rule by failing to place the funds in her trust account. Hier's argument misunderstands the purpose of the rule. An attorney "must not take advantage of physical control of [disputed] funds." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 440 (Iowa 2012) (quoting 2 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 19.7, at 19–14 (3d ed. 2005 Supp.)). So long as the claim is not frivolous, an attorney must place disputed funds in her possession in a CTA. Iowa R. Prof'l Conduct 32:1.15(e) cmt. [3]. Hier cannot act as "judge and jury to resolve the dispute in [her] own favor." *Morse*, 887 N.W.2d at 141. We determine that Hier violated rule 32:1.15(e) by failing to place the disputed funds in her CTA pending resolution of Van Dorn's claim.

**D. Iowa Rule of Professional Conduct 32:1.15(d) and Iowa Court Rule 45.2(2).** The commission found the Board failed to meet its burden to prove that Hier violated Iowa Rule of Professional Conduct 32:1.15(d) and Iowa Court Rule 45.2(2) by failing to return the full $750 to Van Dorn. We agree with the commission. Rule 32:1.15(d) states, "[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive . . . ." Iowa R. Prof'l Conduct 32:1.15(d). "[A] lawyer must promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and must promptly render a full accounting regarding such property." Iowa Court R. 45.2(2). The district court ultimately ordered Van Dorn to pay $1000 of Rothfus's attorney fees. While Carter had demanded Hier return the full $750, their dispute merely required Hier to place the funds in her CTA. *See* Iowa R. Prof'l Conduct 32:1.15(e).

**E. Iowa Rule of Professional Conduct 32:3.3(a)(1).** The commission also found that the Board failed to meet its burden to prove Hier violated Iowa Rule of Professional Responsibility 32:3.3(a)(1). We agree with the commission. That rule states, "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]" *Id.* r. 32:3.3(a)(1). "[M]isrepresentation requires intent to deceive to support an ethical violation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sobel,* 779 N.W.2d 782, 787 (Iowa 2010). "[T]he inability of a person to accurately recall an event does not necessarily lead to the conclusion that the person's inaccurate recollection is an expression of dishonesty or deceit." *Id.*

The Board alleged Hier intended to deceive the court when she told Judge Rickers that she would place the $750 in her CTA. However, Hier

testified that Judge Rickers stated that he would not *order* her to transfer the funds. Judge Rickers could not recall their discussions, and he testified that he believed Hier to be a good, truthful lawyer and that Hier had acted towards the court with honesty and honor during the child support dispute. In addition to Judge Rickers's testimony, the commission heard the live testimony of Carter and Hier. We decline to second-guess the commission's creditability determination that Hier did not intend to deceive the court. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 659 (Iowa 2013) ("We give deference to the commission's credibility determination because the commission heard [the respondent attorney's] live testimony and observed [his] demeanor.").

**IV. Sanction.**

We must decide the appropriate sanction for Hier's failure to place the disputed funds in her CTA pending resolution of Van Dorn's claim. The commission recommended a public reprimand. The Board argues for a suspension. Hier requests a private admonition. If this were Hier's first disciplinary transgression, no suspension would be warranted. But Hier already has had four prior public reprimands and a suspension. "[T]he prior disciplinary history of an attorney is a factor we must consider in imposing discipline." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 589 (Iowa 2011)).

Hier's most recent public reprimand in December 2017 was for violating some of the same trust account rules she violated here, and yet for the next six months, Hier persisted in refusing to place the disputed funds in her CTA. We consider the December 2017 public reprimand to be prior discipline because Van Dorn's counsel renewed his demands for return of the disputed funds in January and March 2018. Hier paid back

half of the disputed amount but neglected to place the balance in her CTA. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 205 (Iowa 2019) (explaining that "[i]n order to be prior discipline, we must have found [the respondent lawyer's] prior conduct violated our rules and sanctioned him before he committed the conduct giving rise to the present proceeding"). The 2017 public reprimand should have motivated Hier to study and comply with the requirements of rule 32:1.15.

We conclude a suspension is required based on Hier's disciplinary history. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 183 (Iowa 2015) (citing Santiago's "failure to learn" from trust account problems identified in an earlier audit as an aggravating factor even though no discipline was imposed previously); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fleming*, 602 N.W. 340, 342 (Iowa 1999) ("[T]he board's past leniency has not had the intended effect of moving [the respondent] toward higher standards of ethical practice."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sprole*, 596 N.W.2d 64, 66 (Iowa 1999) (Sprole's "prior discipline . . . has failed to curb the misconduct. . . . The protection of the public and the reputation of the bar require more than a public reprimand." (Citation omitted.)). We now consider the length of the suspension to impose.

"There is no standard sanction warranted by any particular type of misconduct." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 880 (Iowa 2012). "Though prior cases can be instructive, the sanction warranted in a particular case must be based on the circumstances of that case." *Id.*

> In determining what sanctions should be imposed, we consider the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the attorney's fitness to continue

practicing law, as well as any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, 890 N.W.2d 647, 651 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 337 (Iowa 2015)). "Our primary purpose for imposing sanctions in not to punish the lawyer but to protect the public." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 542 (Iowa 2013).

In *Morse*, we imposed a thirty-day suspension for the lawyer's violation of rule 32:1.15(e) after he kept $1400 that his client had advanced to pay the court reporter for a trial transcript. 887 N.W.2d at 146. We discerned minimal client harm, and the client owed him a larger amount in fees. *Id.* at 144. But we considered "Morse's twenty-six years of experience . . . [as] an aggravating factor." *Id.* In another case, *Rhinehart*, we imposed a sixty-day suspension for violating rule 32:1.15(e), among other rules. 827 N.W.2d at 183. Hier obtained her law license in 1997 and has practiced continuously since 2006. We consider her experience as an aggravating factor. Hier's obstinate refusal to place the disputed funds in her trust account as ordered was reckless and self-defeating.

"Our sanctions for trust account violations have ranged from a public reprimand to license revocation." *Lubinus*, 869 N.W.2d at 550. "When an attorney's minor trust account violations are the result of sloppiness or lack of oversight, we have levied a public reprimand rather than a suspension." *Id.* By contrast, "when an attorney has committed multiple or more systematic trust account violations, we have imposed suspensions, often of thirty days." *Id.* at 551. In *Lubinus*, an attorney violated rule 32:1.15(a) and related rules by knowingly removing unearned

funds from his trust account to cover personal expenses. *Id.* at 553. We imposed a thirty-day suspension. *Id.* at 554.

In *Boles*, we imposed a thirty-day suspension on an attorney for multiple trust account violations and failures to promptly return unearned fees. 808 N.W. 2d at 442–43. The attorney's pattern of misconduct was an aggravating factor. *Id.* at 442. We considered as a mitigating factor that the attorney had taken corrective action to prevent further violations. *Id.* We also considered the attorney's volunteer service and pro bono work, as well as the fact that no clients were harmed, as mitigating factors. *Id.*

In *Parrish*, we imposed a sixty-day suspension for multiple trust account violations. 801 N.W.2d at 590. We noted as an aggravating factor the attorney's six prior private admonitions, two of which involved trust account violations. *Id.* at 589. We noted that "Parrish's conduct over the last ten years has now developed into a pattern of violating the Iowa Rules of Professional Conduct and the rules of this court relating to the administration of trust accounts." *Id.* But we considered in mitigation Parrish's pro bono legal services and community involvement. *Id.*

We consider such mitigating factors in calibrating Hier's discipline. She accepts court appointments from the state public defender's office. A "willingness to accept court-appointed cases" is a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Capotosto*, 927 N.W.2d 585, 590 (Iowa 2019). Hier performs pro bono work and works for low-income clients and indigent criminal defense clients. "Providing legal representation to an underserved part of the community is a significant mitigating factor." *Weiland*, 862 N.W.2d at 643 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 168 (Iowa 2012)). Hier volunteers for her church, for domestic assault victims, and as a mock trial coach and judge. *See Boles*, 808 N.W.2d at 442 (considering volunteering in the community

as a mitigating factor).  And we give weight to the testimony of Judge Rickers that he considered Hier to be a good and truthful lawyer.  *See Rhinehart*, 827 N.W.2d at 183 ("Rhinehart's general reputation for being a hardworking, highly competent, zealous advocate . . . are mitigating factors.").  Importantly, Hier's client suffered no harm.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 467 (Iowa 2014) (noting the absence of client harm as a mitigating factor).

After considering all of the relevant mitigating and aggravating factors here, we return to the most significant aggravating factor, Hier's disciplinary history, and we determine that a thirty-day suspension is appropriate.

## V.  Disposition.

For these reasons, we suspend T.J. Hier's license to practice law for thirty days.  This suspension applies to all facets of the practice of law.  *See* Iowa Ct. R. 34.23(3).  Hier must comply with the notification requirements of rule 34.24.  *See id.* r. 34.24.  The costs of this proceeding are assessed against Hier pursuant to Iowa Court Rule 36.24(1).  Unless the Board files an objection, Hier's license will be automatically reinstated after the thirty-day period of suspension on the condition that all costs have been paid.  *See id.* r. 34.23(2).

**LICENSE SUSPENDED.**

All justices concur, and Appel, J., also concurs specially.

#19–1320, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hier*

**APPEL, Justice (concurring specially).**

I join the majority opinion in this matter. I write separately to emphasize that the canard "possession is nine tenths of the law" has no application when an attorney receives funds from a client, or third party, that are to be used for specific or limited purposes. For example, as we made clear in *Iowa Supreme Court Attorney Disciplinary Board v. Parrish*, an attorney cannot assert a future-claim-of-right defense in the event the attorney misappropriates limited use client funds. 925 N.W.2d 163, 179 (Iowa 2019). There is no allegation in this case that the attorney misappropriated the funds under Iowa Rule of Professional Conduct 32:8.4. But it is worth emphasizing that an attorney who fails to honor the restrictions of a client or third party, when entrusted with funds, could be sailing into waters more dangerous than those presented in this case.