# IN THE SUPREME COURT OF IOWA

No. 09–0932

Filed March 19, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**SCOTT ALDEN SOBEL,**

Appellant.

_____

On appeal of the report of the Grievance Commission of the Supreme Court of Iowa.

Appeal by respondent from grievance commission decision finding respondent committed ethical misconduct and recommending a suspension. **PUBLIC REPRIMAND.**

David L. Brown and Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for appellant.

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for appellee.

**CADY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged Scott A. Sobel with numerous violations of the Iowa Code of Professional Responsibility for Lawyers primarily resulting from his representation of two clients in a criminal matter. The Grievance Commission of the Supreme Court of Iowa found Sobel violated the code of professional responsibility. It recommended Sobel be suspended from the practice of law for a period not less than six months. On our review, we find Sobel violated the code of professional responsibility and impose a public reprimand.

## I. Background Facts and Proceedings.

Scott A. Sobel is an Iowa lawyer who practices law in Des Moines. He was admitted to practice in Iowa in 1983. He graduated from Drake Law School and received his undergraduate degree from Grinnell College. Many of his clients are immigrants, and he has developed a reputation for accepting cases from clients with limited financial means. Sobel has been recognized for his volunteer work in assisting refugees in the community. He has no prior disciplinary record.

In October 2002, Sobel agreed to represent David and Cindy Luu after they were charged with multiple counts of illegal commercialization of wildlife. The Luus are immigrants from Thailand and operate a grocery store in Des Moines. Cindy immigrated to Iowa in 1976 and graduated from high school in Des Moines. David immigrated to Iowa a short time later, and he has a ninth-grade education. David and Cindy married in Des Moines.

The Luus were charged by the state with purchasing and reselling game fish harvested in Iowa from their grocery store. The charges were brought after police and conservation officers from the Iowa Department of Natural Resources (DNR) executed a search warrant at the grocery store on October 21, 2002. Following the search, conservation officers met with the

Luus in the back office of the store to discuss their investigation into the illegal harvesting and selling of fish in certain areas of Des Moines. Although an interpreter was at the scene, the conservation officers did not use the interpreter when they talked to the Luus because they felt they were able to effectively communicate with them without any interpreter assistance. The Luus were cooperative throughout the discussions and spoke about the selling and buying of fish.

The Luus contacted Sobel to represent them because he had represented them on various business and regulatory matters over the prior ten years. The Luus did not execute a written waiver and acknowledgement of the potential conflict of joint representation when they met with Sobel. Sobel testified at the disciplinary hearing that he explained the potential problem of joint representation to the Luus, but the Luus declined to sign a written waiver. David Luu denied the occurrence of any such conversation and testified that he would have signed a waiver if Sobel had asked him to do so. Cindy Luu could not recall any conversation about joint representation.

David Luu gave Sobel a retainer fee in the form of a check in the amount of $2000. Sobel placed the retainer in his trust account and subsequently withdrew the money during the course of the representation. He never provided the Luus with a written accounting of the legal services he performed.

During the course of the representation, Sobel and the Luus met with the prosecuting attorney, Daniel C. Voogt, an assistant Polk County attorney, and the conservation officer in charge of the investigation. The meeting occurred at the Polk County Attorney's office. The case was proceeding in the direction of a plea agreement at the time, and officials from the DNR sought cooperation from the Luus as a part of the agreement. At

this meeting, Sobel was given photographs depicting individuals who state investigators suspected were involved in the harvesting and selling of Iowa game fish. The Luus later provided information to Sobel about the individuals during a conference in his law office. Sobel documented the information provided by the Luus on the photographs.

Voogt believed the Luus understood the investigation and the proceedings based on his interaction with them at the meeting. He further believed the Luus understood that part of their cooperation would require them to identify other individuals in the community who were involved in the illegal fish operation. Voogt expressed his belief that the Luus understood English and did not "have any concerns about the Luus' ability to understand what was going on."

A plea agreement was eventually reached and memorialized in a memorandum of understanding. The Luus agreed to plead guilty to twenty counts of Unlawful Commercialization of Wildlife and to pay a fine of $1000 for each count plus $15 for each fish recovered in the investigation, together with the costs of the investigation. The agreement provided the Luus would also be placed on probation, and they agreed to cooperate with the state in its continued investigation and prosecution of other individuals.

The Luus expressed two concerns to Sobel about the guilty pleas. First, they feared publicity over the case and wanted to keep it out of the news. Second, they were reluctant to appear in court before a judge out of fear of "losing face."

Sobel conferred with Voogt, who agreed his office would not notify the news media of the guilty plea and sentencing proceedings. Sobel then made a representation to the Luus that was understood by them to mean the case would not be made public. Sobel testified at the disciplinary hearing that his comments were not a specific promise, but an expression of his belief that

the news media would not be notified of the proceedings in the case. Sobel never considered asking officials from the DNR to refrain from publicizing the case.

Sobel and the Luus appeared at the Polk County Courthouse on November 22, 2002, for the purpose of entering the pleas of guilty and for the court to impose sentence. Voogt appeared for the state, and the case was assigned to District Associate Judge Cynthia Moisan. The recollections of the individuals involved in the proceeding differed significantly over the question of whether the Luus personally appeared before the judge. However, it was clear the Luus were reluctant and embarrassed to personally appear before the judge. Moreover, Sobel and Voogt discussed the possibility of waiving the personal appearance of the Luus in court and disposing of the case by a written plea and sentencing. This discussion occurred while the Luus waited outside the courtroom in the hallway of the courthouse, and the discussion eventually included Judge Moisan. It was also undisputed that the written plea of guilty was ultimately accepted by the judge, and the sentence was imposed at the same time. Furthermore, the proceeding was not reported. The sentence imposed was consistent with the prior agreement.

Voogt testified at the disciplinary hearing he could not specifically recall if the Luus were in the courtroom when the judge accepted the pleas and imposed the sentences. However, he thought they may have been "sitting in the front row." Nevertheless, he could not recall any case from all the cases he had handled in the past when the defendant was not present for sentencing for an indictable offense.

The Luus expressed no problems or complaints until a few weeks after sentencing when the DNR issued a news release about the case. The news release was followed by an article published in the *Des Moines Register.* The

article upset the Luus. Around the same time, Sobel gave the Polk County Attorney the information provided to him by the Luus about the other individuals involved in the illegal commercialization of fish, as documented on the photographs of the suspects. Sobel took this action with the belief that it was consistent with the cooperation agreement.

A short time later, the Luus terminated their professional relationship with Sobel due to the public disclosure of the case. Sobel responded by filing motions to withdraw. The Luus obtained new counsel, claiming they had little understanding of the criminal proceeding against them due to the lack of an interpreter. As a result, they felt the disposition of the case was unfair and blamed Sobel. The Luus eventually filed an application for postconviction relief, alleging Sobel provided ineffective assistance of counsel in representing them in the criminal proceeding. The application for postconviction relief was filed in June 2003.

The postconviction relief application alleged several grounds of ineffective assistance of counsel, including the failure of Sobel to provide or request an interpreter for the Luus during the criminal proceeding. The application claimed the absence of an interpreter caused the Luus to fail to fully understand the criminal proceedings against them, including the written plea bargain and cooperation agreement.

At the postconviction hearing, Sobel testified under oath he appeared at the hearing on the plea and sentencing in the criminal proceeding with the Luus. He testified the Luus were present with him in the courtroom, and he informed Judge Moisan that the Luus did not desire to have an interpreter for the hearing, contrary to his advice. Sobel further testified Judge Moisan briefly questioned the Luus about their decision to decline an interpreter, and she then proceeded with the hearing by accepting the pleas and imposing the sentence. Sobel responded to requests for admissions

during the course of the proceedings and expressed his belief that the Luus did appear in court and were questioned by the judge.

The Luus testified they never appeared before a judge for the plea and sentencing. They also testified they had a limited understanding of the English language and of the criminal proceeding. Judge Moisan, her court reporter, and her court attendant testified the Luus never appeared in court. Judge Moisan testified Sobel and Voogt met with her in chambers and requested to waive the appearance of the Luus. Judge Moisan indicated Sobel assured her the Luus spoke English. She recalled she signed the sentencing order based on the written plea without requiring the Luus to appear in court.

The postconviction relief court found the Luus received ineffective assistance of counsel and vacated the judgment and sentence. The district court specifically found Sobel was ineffective by allowing the Luus to enter their pleas of guilty and to be sentenced without appearing in court and without providing an interpreter for them. Following the ruling, the disciplinary board filed a multicount complaint against Sobel, alleging various violations of the code of professional responsibility arising out of his representation of the Luus and his testimony at the postconviction relief hearing.

## II. Board Complaint.

The board claims Sobel engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by giving false testimony at the postconviction relief hearing concerning the presence of the Luus and the actions and conduct of Judge Moisan at the plea and sentencing hearing in violation of DR 1–102(A)(1), (4), (5), and (6) and DR 7–102(A)(8) of the Iowa Code of Professional Responsibility for Lawyers. It asserts Sobel failed to provide full disclosure to the Luus concerning the potential effect of joint

representation in violation of DR 5–105(D), DR 7–102(A)(8), and DR 1–102(A)(1), (5), and (6). The board further claims Sobel failed to render a complete accounting of client funds in violation of DR 9–102(B)(3), DR 7–102(A)(8), and DR 1–102(A)(1), (5), and (6). By failing to provide an interpreter for the Luus in the criminal case, the board alleges Sobel engaged in conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5). This conduct also violated DR 1–102(A)(1) and (6). The board further claims Sobel violated the attorney-client privilege by turning over the information provided to him by the Luus and documented on the photographs to the county attorney without their consent in violation of DR 4–101(B)(1) and DR 1–102(A)(1), (5), and (6). Finally, the board contends Sobel engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by misrepresenting to the Luus that their case would not be made public in violation of DR 1–102(A)(4). It also alleged this conduct violated DR 1–102(A)(1), (5), and (6). The commission found the board established the violations described in the complaint. It recommended Sobel be suspended from the practice of law for six months.

### III.  Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 375 (Iowa 2002). We are not bound by the findings made by the commission, but give them weight. *Id.*

### IV.  Violations.

The violations alleged by the board cover Sobel's conduct in representing the Luus in the criminal proceeding and his subsequent conduct in testifying at the postconviction relief action. We begin by addressing the board's claim that Sobel was dishonest, deceitful, and fraudulent when he (1) represented under oath at various times during the

postconviction relief action that the Luus appeared in court before Judge Moisan for the plea and sentence, (2) said he had expressed the need for an interpreter at the plea and sentence hearing, and (3) testified at the postconviction relief hearing that the court questioned the Luus about an interpreter.

**A. Misrepresentation and Dishonesty.** The commission found the testimony of Judge Moisan and her staff was an accurate account of what occurred on November 22, 2002, when the plea of guilty was entered and the sentences were imposed. Consequently, it concluded Sobel was untruthful in expressing his contrary account of the proceedings during the postconviction relief action. While we agree Judge Moisan and her staff provided the most accurate account of the proceedings, the commission failed to consider the possibility that Sobel could have, nevertheless, expressed a conflicting account of the proceeding without engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

We begin by recognizing the existence of ample research showing that a person's memory of events can be subject to error and distortion based on factors unrelated to intent or purpose to be untruthful. *See* Daniel L. Schacter, *The Seven Sins of Memory: How the Mind Forgets and Remembers* 4–5 (2001) (highlighting seven main reasons for memory failures); Daniel L. Schacter & Elaine Scarry, *Introduction* to *Memory, Brain, and Belief* 2–3 (Daniel L. Schacter & Elaine Scarry eds. 2000) ("To the extent that beliefs are defined by a subjective conviction about the truth of an assertion that cannot be proven, then memory could be viewed as a type of belief . . . . And because memory is a fundamentally constructive process that is sometimes prone to error and distortion, it makes sense that such beliefs are occasionally misguided."); Deborah Davis & William C. Follette, *Foibles of Witness Memory for Traumatic/High Profile Events*, 66 J. Air L. & Com. 1421,

1439–1544 (2001) [hereinafter Davis & Follette] (discussing failures in the acquisition, storage, and retrieval of memories that may lead to inaccuracies). Inaccurate memory can result from human failures encoding, storing, or retrieving information from the brain. Davis & Follette at 1436. Thus, the inability of a person to accurately recall an event does not necessarily lead to the conclusion that the person's inaccurate recollection is an expression of dishonesty or deceit. Generally, misrepresentation requires intent to deceive to support an ethical violation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 553 (Iowa 2004).

In this case, no record was made of the court proceeding. The event that was the subject of recall for all witnesses occurred two years before the postconviction relief action and nearly six years before the disciplinary hearing. Clearly, the passage of time presented challenges to the ability to recall the event. The prosecuting attorney recalled the Luus were present, but could not recall if they were actually in the courtroom or remained outside the courtroom. He also testified he could not remember a time when he was involved in a criminal case when the defendant did not appear for sentencing. Importantly, the prosecuting attorney was convinced at one point in the postconviction relief action that the Luus were in the courtroom and were questioned by the judge.

Considering all the facts and circumstances, we conclude the board failed to prove by a convincing preponderance of the evidence that the inaccurate statements by Sobel during the postconviction relief proceeding were made with an intent to deceive or to be dishonest. Our prior cases have only defined a convincing preponderance of the evidence as a level of proof between a preponderance of the evidence and evidence beyond a reasonable doubt. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Miller*, 568 N.W.2d 665, 666 (Iowa 1997). This standard, however, necessarily requires no

substantial doubt about the correctness of the conclusion drawn from the evidence. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (referring to "clear and convincing evidence" standard).

As to the specific element of intent to deceive that is required to be proven before an attorney can violate the ethical prohibition of engaging in conduct involving misrepresentation and dishonesty, we are not convinced on our de novo review that the record establishes sufficient proof to support the violation. While it is possible Sobel may have intended to misrepresent the truth, it is just as likely his recollection was inaccurate in the same way the prosecutor seemed to inaccurately recall the proceedings. The Luus were present in the courthouse, and a discussion did occur between the attorneys and the judge concerning the Luus' appearance in court. Considering the passage of time and the number of court appearances made by busy attorneys, Sobel could have simply inaccurately recalled the event or otherwise formulated an inaccurate, yet honest, account of the event. While the record supports no substantial doubt that Sobel's account of the plea and sentencing proceeding was inaccurate, it does not supply the same level of confidence that Sobel intended to be deceptive in his recollection of the event.

**B. Remaining Violations.** The remaining violations can largely be grouped into a series of misunderstandings and miscommunications between Sobel and the Luus. On the charge of failing to make a full disclosure of the effects of joint representation in a criminal case, Sobel maintained he fully explained the issue of joint representation to the Luus, while David Luu believed the issue was never discussed, and Cindy Luu could not recall. On the charge of violating the attorney-client privilege, Sobel maintained he believed the Luus understood that the information he provided to the county attorney after the sentencing was part of the

cooperation agreement, while the Luus claimed they did not understand the cooperation agreement. On the charge of misrepresenting the public nature of the criminal case, Sobel maintained he told the Luus he would pursue certain action to keep the case out of the news, while the Luus believed Sobel told them the case would be private.

In each instance, the commission either found the Luus were not fully informed and did not understand the issue underlying each allegation due to the inadequate communication between Sobel and the Luus or found the Luus' testimony to be more credible than the testimony of Sobel. Under either case, the commission found violations occurred.

We agree Sobel's failure to obtain an interpreter to assist in adequately communicating with the Luus was at the center of the dispute in nearly all of the charges. Yet, Sobel had represented the Luus on many occasions in the past, and he believed he was able to adequately communicate with them without an interpreter. The prosecuting attorney and the conservation officer from the DNR also believed they effectively communicated with the Luus on those occasions they met with them during the course of the criminal proceeding. Although Sobel's judgment concerning the effectiveness of his communication may have been wrong, an error in judgment or mere negligence by an attorney is not a basis for discipline. *Comm. on Prof'l Ethics & Conduct v. Bitter*, 279 N.W.2d 521, 526 (Iowa 1979) (recognizing disciplinary rules relating to misconduct do not apply to actions based on mere negligence); *see Moorman*, 683 N.W.2d at 551–52 ("Neglect is more than ordinary negligence and usually involves multiple acts or omissions."). Importantly, other people involved in the case who had contact with the Luus similarly believed they understood the proceedings. We cannot conclude the judgment formed by Sobel that he could adequately communicate with the Luus without an interpreter, even if later found to be

wrong, was the type of conduct that reflects adversely on the fitness of an attorney to practice law. Thus, the violations based on Sobel's failure to obtain an interpreter cannot be sustained. Sobel believed he had adequately communicated the problem of joint representation, the terms of the plea and cooperation agreement, and the risks of public disclosure of the case. Even if his judgment was wrong, it did not make his conduct in representing the Luus without the aid of an interpreter unethical.

Additionally, those violations found by the commission that essentially required the commission to accept the testimony of the Luus that the conversations and representations by Sobel never occurred or did not occur as Sobel described cannot be sustained. Sobel testified he properly advised the Luus contrary to the complaints made against him by the Luus. To the extent the Luus denied the advice was given or the relevant communications did not occur as Sobel claimed, we recognize the Luus had a motive to deny the conversations and claim confusion and misinformation about the proceedings after sentencing was imposed. The Luus had a motive to deny the conversations took place not only to "save face" in their community once the case became public, but also to support their subsequent belief that the sentence was too harsh. Of course, we recognize Sobel would have also had a motive to falsely deny the Luus' claims to avoid the consequences of ethical misconduct. Yet, the Luus' testimony was not strong enough to support the violations found by the commission. In addition to their possible motives, the confusion and lack of understanding urged by the Luus clearly diminished the weight of their testimony about the existence of certain conversations and the accuracy of Sobel's representations during the conversations. To the extent Sobel contributed to the confusion and misunderstanding experienced by the Luus, we have already concluded any

error in judgment by Sobel in failing to utilize the assistance of an interpreter does not support discipline.

Nevertheless, the board did establish Sobel failed to provide written notice of fees he withdrew from the $2000 retainer provided by the Luus and deposited in his trust account. DR 9–102(B)(3) requires lawyers to not only maintain complete records of all funds delivered to the lawyer, but to also render an accounting to the client. We have interpreted this provision to require lawyers who accept advance fee payments to "notify their clients in writing of the time, amount, and purpose of any withdrawal of the fee." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 59 (Iowa 1998).

Sobel asserted he provided the Luus with an oral explanation of the fees withdrawn from the retainer. He also argued the retainer was not an advance fee payment subject to the rule because he had earned the fee by the time the retainer was paid.

The accounting rules set out in *Apland* require notice of withdrawal of the fee to be in writing. *Id.* Additionally, Sobel acknowledged he had not earned the entire retainer at the time it was received. Accordingly, we conclude Sobel violated DR 9–102(B)(3).

**V. Discipline.**

Consistent with our prior cases, we discipline Sobel by imposing a public reprimand. *See Apland*, 577 N.W.2d at 60; *Comm. on Prof'l Ethics & Conduct v. Garretson*, 515 N.W.2d 25, 28 (Iowa 1994) (stating failure to render accounting for legal services warrants public reprimand).

**VI. Conclusion.**

We publicly reprimand Sobel for failing to render a proper written accounting for legal services. Costs of the action shall be taxed to Sobel pursuant to rule 35.26(1).

**PUBLIC REPRIMAND.**

All justices concur except Streit and Wiggins, JJ., who take no part.