# In the Iowa Supreme Court

No. 24–1494

Submitted February 18, 2025—Filed March 14, 2025

**Iowa Supreme Court Attorney Disciplinary Board,**

Appellee,

vs.

**Carmen E. Eichmann,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

The grievance commission recommends suspension for violation of ethical rules. **Attorney Reprimanded.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

Tara van Brederode, Robert A. Howard III, and Allison A. Schmidt, Des Moines, for appellee.

**Oxley, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged attorney Carmen Eichmann with numerous violations of the Iowa Court Rules and Iowa Rules of Professional Conduct resulting from her representation of Shane Pankonen in his dissolution of marriage action. The Iowa Supreme Court Grievance Commission (commission) found various violations of our ethics rules and recommended that Eichmann be suspended from the practice of law for thirty days. Eichmann challenges the commission's findings and recommended sanction, arguing that her conduct did not violate any ethical rules and the complaint should be dismissed. Upon our de novo review of the record, we impose a public reprimand.

## I. Factual Background and Proceedings.

Eichmann is a solo practitioner in Polk County. She has been licensed to practice law in Iowa since 1988. Her current practice focuses on family law, including guardianships, custody, divorce, and elder abuse cases.

On the recommendation of a coworker, Pankonen hired Eichmann in December 2019 to represent him in a contentious divorce from his wife. Eichmann describes Pankonen as a difficult client, which to some extent is borne out by the record. For example, in November 2020, against Eichmann's advice, Pankonen filed a complaint with the Board against his ex-wife's counsel. Pankonen's complaint was summarily dismissed.

By 2021, the underlying divorce proceedings were "very heated." Both parties violated the district court's order to preserve assets. At different points, both sides were ordered to pay the other's attorney fees related to motions to compel. The parties filed cross-motions for contempt of court. Ultimately, the district court dismissed Pankonen's claims for contempt against his ex-wife but

found Pankonen in contempt for unilaterally liquidating two certificates of deposit.

The parties were unable to reach a settlement after two mediation attempts. The district court held a two-day trial in August 2021 and issued its decree for dissolution of marriage on August 19. Pankonen was unhappy about its terms, particularly that his ex-wife was to receive a portion of his 401(k) and Roth IRA investments. From that point forward, tension grew between Eichmann and Pankonen. Pankonen did not want to provide Eichmann with the documents needed to carry out the terms of the decree, resulting in his ex-wife filing a motion to compel.

By 2022, the tension between Eichmann and Pankonen intensified, with billing and accounting matters now at issue. To understand the billing disputes, we recount the contractual part of their attorney–client relationship. Eichmann and Pankonen's December 10, 2019 attorney fee contract provided in part:

> Hourly Fee. Client shall pay Attorney Carmen Eichmann a fee of $300 per hour for attorney services and $100.00 per hour for legal assistant services performed under this Contract and shall pay a retainer of $5,000.00 (paid $2,500 on 12/5/2019, remainder next pay period). Client will also pay an additional sum for the anticipated court costs (filing fee, service costs and decree). Any unused portion of the retainer shall be refunded to Client. Future Advances. Client shall advance additional money for fees from time to time as requested by Attorney to pay anticipated fees. Any unused portion of such advances shall be refunded to Client. Billing and Payment. All fees will be billed periodically and shall be due and payable at the time of billing.

Pankonen paid the $5,000.00 retainer as agreed, and Eichmann deposited it into her client trust account. Initially, Eichmann provided written notice to Pankonen about the trust account activity. Eichmann informed Pankonen in a December 31 letter that she withdrew $80.00 from his trust account to pay a process service fee to the Polk County Sheriff's Office.

But Eichmann was unable to produce copies of any other written communications to Pankonen about the trust account activity after the December 31 letter.[1] She produced no statements of her billings or any accountings provided to Pankonen for his trust account over the two-plus-year span of her representation. Eichmann's internal trust transfer form reflects a $2,500.00 withdrawal in April 2020, $1,000.00 withdrawals in June and August, and two withdrawals in September for $451.59 and $375.00. Yet, Eichmann provided no written communications to Pankonen to explain these withdrawals. Pankonen made additional payments totaling $7,000.00 throughout 2020 and 2021. Eichmann deposited one $1,000.00 payment into the trust account in July 2021. The other payments went into her operating account as earned income. Eichmann provided no written notice to Pankonen about how those payments were handled.

The only other activity through the trust account involved the proceeds from the sale of Pankonen and his ex-wife's marital property. Eichmann deposited $40,185.13 from the sale of their house and $2,000.00 from the sale of a swim spa on November 5, 2020. Following entry of the dissolution decree, Eichmann paid half of that total ($21,093.00) to Eichmann's ex-wife's counsel on September 7, 2021. At Pankonen's request, Eichmann wrote a check to him

---

[1]Eichmann produced three documents to the Board to reflect the accounting for her representation of Pankonen. Exhibit 10 is a twenty-four-page "cumulative invoice" addressed to Pankonen and dated October 13, 2022, reflecting all of Eichmann's billing entries beginning on December 5, 2019 through the last entry on May 16, 2022 for a phone call to Pankonen's new attorney, additional charges (for things like copies and filing fees), and payments received towards his account. Exhibit 12 is identical to exhibit 10 except that it is dated September 17, 2023, and omits the last page reflecting payments. Exhibit 13 is an undated, thirteen-page "trust transfer form" for Pankonen reflecting beginning and ending balances and transactions for each month between December 2019 and January 2023. Eichmann claims that she showed the cumulative invoice to Pankonen when he came into her office, but she testified at the hearing that she had no evidence that she provided written copies of either document to Pankonen during or after her representation.

on September 28 for $4,000.00 to pay his property taxes. And the trust account records reflect a withdrawal of $15,000.00 from the sale proceeds on August 31 "for atty fees." On September 13, Pankonen emailed Eichmann, asking: "[W]ere you able to apply $14,000.00 to my bill from the sale of [the house]?" Eichmann did not respond to Pankonen's question or provide Pankonen with written notice that she had already withdrawn $15,000.00 from those proceeds. After the August and September 2021 transactions, the trust account had a balance of $2,715.82. That balance remained unchanged until January 2023.

With this history, we return to the billing dispute between Eichmann and Pankonen. On January 28, 2022, Pankonen emailed Eichmann, stating: "[T]his is my fourth request for an invoice and still wanting it." Eichmann did not email Pankonen an invoice. On January 30, Pankonen emailed Eichmann again, stating: "I would like the $17000.00 released since I have no clue what my bill is." Again, Eichmann did not provide Pankonen with an invoice. On March 30, Pankonen again emailed Eichmann, stating:

> What part of you're fired are you not understanding. I fired you. Please release all information to me for my new legal counsel. As stated in the 5 emails that were sent, and to release the monies in the trust account since no bills have been brought forth. $17,000 should be released to me until a bill is provided, for the 5th or 6th time. The full amount of $17000.00 should be released [since] I have not given the ok on any bills.

Eichmann replied to Pankonen the same day, stating: "You have received my billings more than once Shane. I don't know what you are talking about when you contend you have not received my billings. This is ridiculous Shane." But again, Eichmann did not email Pankonen an invoice showing any outstanding fees, nor did she notify Pankonen of the amount she was holding in trust or refund any amounts to him. Eichmann did not file a motion for withdrawal at

that time because the district court directed her at a hearing to stay on the case until successor counsel filed an appearance.

On April 22, attorney Jonathon Flaherty-Tarpey emailed Eichmann, informing her that he had "been retained to represent Shane in concluding all post-decree matters," noting that she had not responded to Pankonen's communication terminating her services, and asking for the most recent billing statement because Pankonen had "not received a retainer billing statement from [her] so he was not able to confirm whether there [was] a retainer left with [her] firm to transfer over." According to Eichmann, she attempted to call Flaherty-Tarpey, but she did not reply to his email. Flaherty-Tarpey filed an appearance in Pankonen's dissolution of marriage case on April 25. Eichmann did not file a motion for withdrawal.

On June 10, Pankonen again emailed Eichmann, stating: "Please send me copies of all the bills you have sent me. Please and thank you." Eichmann did not respond. Pankonen sent Eichmann a follow-up email on July 10, stating: "Still waiting on my bill and the 17k back [due] to no bill." Again, no response. On December 18, Pankonen sent Eichmann an email with the subject line "All invoices and bills," stating: "What day is good for me to stop and pick up copies?" And again, Eichmann did not reply.

As noted, the client trust account balance remained at $2,715.82 until at least January 2023. Eichmann added a "disputed" notation to that balance on her trust transfer form in September 2022. At some point, Eichmann emptied the trust account and applied it to Pankonen's outstanding fees.

Pankonen complained to the Board about Eichmann's lack of communication related to the billing and accounting dispute, but he made no complaints about Eichmann's representation in the underlying dissolution of

marriage action. The Board filed a complaint against Eichmann with the commission on January 2, 2024, asserting multiple violations of the Iowa Court Rules and Iowa Rules of Professional Conduct. Specifically, the Board alleged nine rule violations:

- Iowa Rule of Professional Conduct 32:1.4(a)(4) (client communication): "A lawyer shall . . . promptly comply with reasonable requests for information . . . ."

- Iowa Rule of Professional Conduct 32:1.15(d) and court rule 45.2(2) (promptly delivering client funds and rendering a full accounting of client funds): "[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

- Iowa Rule of Professional Conduct 32:1.15(*e*) (disputed funds): "When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."

- Iowa Rule of Professional Conduct 32:1.15(f): "All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules."

- Iowa Rule of Professional Conduct 32:1.16(a)(3) (withdrawal from representation): "Except as stated in paragraph (c), a lawyer . . . shall withdraw from the representation of a client if . . . the lawyer is discharged."

- Iowa Court Rule 45.2(3)(a) (recordkeeping):

The following records must be retained . . . for a period of six years after termination of the representation:

. . . .

(4) Copies of accountings to clients or third persons showing the disbursement of funds to them or on their behalf.

(5) Copies of bills for legal fees and expenses rendered to clients.

- Iowa Court Rule 45.7(4) (written notice upon withdrawal and accounting): "A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal."

The commission held a one-day evidentiary hearing on the matter on April 30. The Board called Eichmann and Pankonen to testify. Eichmann testified that whenever Pankonen came into her office, she asked him about payment and either showed him billings on her computer screen or printed out hard copies if she knew he was coming in, typically "[a]t least once a month." When questioned about her repeated failure to provide Pankonen with a written accounting for each withdrawal, Eichmann admitted that she made a mistake. She also admitted her repeated failures to provide and retain copies of the bills she claimed to have given Pankonen every four to six weeks. Pankonen testified that Eichmann never provided him with any billing statements or a written accounting of the withdrawals from his trust account. He also testified that he had never seen the cumulative invoice marked as exhibit 10 or the trust transfer form marked as exhibit 13.

On September 17, the commission issued its findings of fact, conclusions of law, and recommendation. The commission concluded that the Board proved attorney misconduct by a convincing preponderance of the evidence for six of the nine alleged rule violations: Iowa Rules of Professional Conduct 32:1.4(a)(4), 32:1.15(e), 32:1.15(f), and 32:1.16(a)(3), and Iowa Court Rules 45.2(3)(a)(5) and 45.7(4). But the commission concluded that the Board did not prove a violation of Iowa Rule of Professional Conduct 32:1.15(d) or Iowa Court Rule 45.2(2), and it did not address the alleged Iowa Court Rule 45.2(3)(a)(4) violation. In recommending sanctions, the commission identified a pattern of attorney misconduct (four private admonishments) and substantial experience in the practice of law (active attorney since 1988) as aggravating factors and identified Eichmann's professional commitments and public service (reflected in statements from judges and her prior work experience) and recognition of her wrongdoing as mitigating factors. The commission recommends a thirty-day suspension of Eichmann's license to practice law.

## II. Standard of Review.

"In an attorney disciplinary case, we review de novo the alleged violations and evidence to ensure that the Board has proved each allegation of misconduct by a convincing preponderance of the evidence. The same underlying conduct may violate multiple rules of professional conduct at once." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lipski*, 14 N.W.3d 751, 757 (Iowa 2024) (citations omitted). "Although we give the commission's findings and recommendations respectful consideration, we are not bound by them. If we find the Board proved misconduct by a convincing preponderance of the evidence, we may impose a greater or lesser sanction than recommended by the commission." *Iowa Sup. Ct.*

*Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 205 (Iowa 2016) (citation omitted).

### III. Analysis.

**A. Client Communication, Disputed Funds, and Withdrawal from Representation.** We first consider whether the Board proved by a convincing preponderance of the evidence that Eichmann violated Iowa Rules of Professional Conduct 32:1.4(a)(4), 32:1.15(e), and 32:1.16(a)(3).

1. *Rule 32:1.4(a)(4) violation (client communication).* Rule 32:1.4(a)(4) requires lawyers to "promptly comply with reasonable requests for information." Iowa R. of Prof'l Conduct 32:1.4(a)(4). "Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation." *Id.* r. 32:1.4 cmt. [1]. "An attorney violates this rule when he or she fails to keep their client informed about the progress on the case, repeatedly fails to respond to requests for information, or does not respond to a client's attempts to contact the attorney." *Weiland*, 885 N.W.2d at 209.

The Board contends that Eichmann violated rule 32:1.4(a)(4) by failing to respond to Pankonen's repeated, reasonable requests for billings and accountings. Eichmann contends that she did not violate rule 32:1.4(a)(4) because she kept Pankonen informed about the progress of his dissolution of marriage action, and he has never complained about those communications. But nothing in rule 32:1.4(a)(4) limits its command to requests related to the underlying representation. A client's request for information about the lawyer's billings and accountings is a request for information under rule 32:1.4(a)(4). Pankonen made at least six requests for billings and accountings over a six-month period. At the evidentiary hearing, Eichmann admitted that she was aware "that at or before you withdraw funds from trusts, you're required to

provide clients with written notice of time, amount, and purpose of any withdraw[al] together with a complete accounting." Nevertheless, Eichmann testified that she did not respond to Pankonen's requests "[b]ecause he had the information," she "knew there was something going on by this," and she "did not trust him at all." These rationalizations did not excuse Eichmann from the requirement to respond to her client's repeated requests for information about the status of his bill. As far as we can tell from the record, Eichmann never provided Pankonen with a written itemization of her billings in his case during the two-plus-years that she represented him.

The Board proved that Eichmann violated rule 32:1.4(a)(4).

2. *Rule 32:1.15(e) violation (disputed funds).* "Rule 32:1.15(e) requires a lawyer to keep disputed property separate until the dispute is resolved." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 439–40 (Iowa 2012); *see also* Iowa R. of Prof'l Conduct 32:1.15(e).

> This rule "is perhaps even more critical . . . when the dispute . . . is between *the lawyer* and either a client or a third party . . . . In these situations, the lawyer must not take advantage of physical control of the funds, but must scrupulously abide by . . . protocol."

*Boles*, 808 N.W.2d at 440 (omissions in original) (quoting 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 19.7, at 19–14 (3d ed. 2005 Supp.)). "The disputed portion of the funds must be kept in a trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration." Iowa R. of Prof'l Conduct 32:1.15 cmt. [3].

The Board contends that Eichmann violated rule 32:1.15(e) by making no attempt to resolve the dispute over the remaining funds in Pankonen's trust account ($2,715.82) and eventually withdrawing those disputed funds to pay herself. Eichmann's trust transfer form indicates that of the $2,715.82,

$2,092.13 was from Pankonen's share of the sale of marital property, and $663.69 was from funds that Pankonen previously provided to Eichmann as an advance payment for attorney fees. Despite Pankonen's repeated requests, Eichmann provided none of this information to him. Eichmann contends, with no documented support, that she and Pankonen had an agreement that she would apply funds from Pankonen's share of the sale of marital property to his outstanding bill for legal fees. The record reflects that they agreed that Eichmann could use a portion of the funds from Pankonen's share of the sale of marital property—$14,000.00 according to Pankonen, $15,000.00 according to Eichmann—toward Pankonen's outstanding legal fees. Notably, Eichmann testified that the agreement was to use $15,000.00 of the marital funds, which she transferred out of the trust account shortly after the dissolution decree was entered. But the fact that there was an agreement for $14,000.00 or $15,000.00 does not mean that there was an agreement about the disposition of the remaining funds that Eichmann left in the trust account.

Eichmann's argument that Pankonen agreed she could use the settlement funds to pay her bill is contrary to her own actions of adding a "disputed" notation to her trust transfer form in September 2022, when the account had a balance of $2,715.82. And at the evidentiary hearing, Eichmann testified: "We had a disputed problem on the fees, obviously." Nevertheless, with the remaining $2,715.82 funds in trust still disputed and no written documentation of attempts to promptly resolve the dispute, Eichmann testified that she eventually unilaterally withdrew those funds to pay herself without consulting with, or even notifying, Pankonen. Eichmann was not permitted to "act as 'judge and jury to resolve the dispute in [her] own favor.' " *Iowa Sup. Ct. Att'y Disciplinary Bd. v.*

*Hier*, 937 N.W.2d 309, 316 (Iowa 2020) (alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 141 (Iowa 2016)).

The Board proved that Eichmann violated rule 32:1.15(e).

3. *Rule 32:1.16(a)(3) violation (withdrawal from representation).* Rule 32:1.16(a)(3) requires a lawyer to "withdraw from the representation of a client if . . . the lawyer is discharged." Iowa R. of Prof'l Conduct 32:1.16(a)(3); *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 609 (Iowa 2012) (finding a violation of rule 32:1.16(a)(3) when a lawyer failed to withdraw for approximately five months after being discharged by the client).

The Board contends that Eichmann violated rule 32:1.16(a)(3) by failing to withdraw from her representation after the appearance of successor counsel. As discussed above, Pankonen discharged Eichmann at least by March 30, 2022, via an email to Eichmann that stated:

> What part of you're fired are you not understanding. I fired you. Please release all information to me for my new legal counsel. As stated in the 5 emails that were sent, and to release the monies in the trust account since no bills have been brought forth. $17,000 should be released to me until a bill is provided, for the 5th or 6th time.

Flaherty-Tarpey's email to Eichmann on April 22, approximately one month later, indicates that Eichmann had yet to file a motion for withdrawal:

> My understanding from Shane is that he has communicated to you that he wished to terminate your representation of him but that he did not receive a response. My review of the docket record for this case does not show any motion for withdrawal on file and Shane states that he has not been offered a consent to sign. Please verify that this is the case and if you have responded to Shane regarding withdrawal, forward that correspondence to me.

And as of the April 30, 2024, evidentiary hearing (two years later), Eichmann had still not filed a motion for withdrawal. When questioned about her failure to withdraw, Eichmann testified that the district court directed her to stay on

Pankonen's dissolution of marriage case until new counsel filed an appearance. But she concededly did not withdraw after Flaherty-Tarpey filed an appearance on April 25, 2022, reasoning that she needed to monitor the case because she was concerned about "what Shane was going to be doing . . . behind [her] back at that point" and wanted to ensure that he "[w]asn't blaming [her] for not turning over documents that [she] didn't have."

The rules do not allow an attorney to remain on a case to keep tabs on the former client after the attorney has been fired. The Board proved that Eichmann violated rule 32:1.16(a)(3).

**B. Recordkeeping, Written Notification upon Withdrawal, and Accounting.** We next consider whether the Board proved by a convincing preponderance of the evidence that Eichmann violated Iowa Court Rules 45.2(3)(a)(4), 45.2(3)(a)(5), and 45.7(4), and Iowa Rule of Professional Conduct 32:1.15(f).

Iowa Court Rule 45.2(3)(a)(4)–(5) provides:

> A lawyer who practices in this jurisdiction must maintain current financial records as provided in these rules and required by Iowa Rule of Professional Conduct 32:1.15. The following records must be retained for each client trust account for a period of six years after termination of the representation:
>
> . . . .
>
> (4) Copies of accountings to clients or third persons showing the disbursement of funds to them or on their behalf.
>
> (5) Copies of bills for legal fees and expenses rendered to clients.

Further, Iowa Court Rule 45.7(4) provides:

> *Notification upon withdrawal of fee or expense.* A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or

expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal.

Finally, Iowa Rule of Professional Conduct 32:1.15(f) (referenced in Iowa Court Rule 45.2(3)(a)) "requires an attorney to abide by the Iowa Court Rules in maintaining their client trust accounts." *Weiland*, 885 N.W.2d at 207; *see also* Iowa R. of Prof'l Conduct 32:1.15(f) ("All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.").

The Board contends that Eichmann violated these rules by failing to provide Pankonen with written notices when she withdrew funds from his trust account and failing to retain copies of the bills that she allegedly provided to Pankonen each month. Eichmann contends that exhibits 10, 12, and 13 satisfied these requirements. Exhibit 10 (dated October 13, 2022) and exhibit 12 (dated September 17, 2023) are the cumulative invoices provided long after Pankonen discharged Eichmann in March 2022 and nearly three and four years after Eichmann began representing Pankonen in December 2019. Exhibit 13 is the trust transfer form reflecting Eichmann's trust account activity for each month between December 2019 and January 2023. But the trust transfer form is not dated and there is no indication when Eichmann added the entries or that she provided a copy of the trust transfer form to Pankonen. In addition, there are discrepancies between the cumulative invoices and the trust transfer form.

At the evidentiary hearing, Eichmann testified that she printed hard copies of billing statements for Pankonen "at least once a month." When asked if she retained copies of the periodic billing statements that she alleges she provided to Pankonen, Eichmann stated: "Not always. . . . At times I did. . . . I did the best I could, so -- I mean, nothing changed. I mean, I didn't create a separate Timeslips account with other information." Pankonen denied ever receiving a copy of any part of the cumulative invoice, let alone a copy of the cumulative

invoice itself. Eichmann's cumulative invoices that postdate her representation of Pankonen do not reflect any of the actual bills that Eichmann claims to have provided Pankonen. Her failure to retain copies of bills for legal fees and expenses in Pankonen's dissolution of marriage action amounts to a violation of rule 45.2(3)(a)(5).

The Board notes that the commission did not issue a ruling on the rule 45.2(3)(a)(4) charge. The commission's failure to rule on a claimed violation does not prevent us from considering the matter. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sharpe*, 12 N.W.3d 338, 345, 348–49 (Iowa 2024) (noting that the commission did not issue a ruling on rule 45.2(2) but nevertheless holding that the attorney violated rule 45.2(2)). Applying the same reasoning used to find a violation of rule 45.2(3)(a)(5) (failure to retain copies of bills for legal fees and expenses allegedly provided to Pankonen), we find a violation of rule 45.2(3)(a)(4) (failure to retain copies of accountings to Pankonen showing the disbursement of funds to him or on his behalf). Iowa Court Rule 45.2(3)(a)(4) and (5) tie directly into Iowa Court Rule 45.7(4), which requires written notice upon withdrawal and an accounting.

Without copies of the periodic billing statements allegedly provided to Pankonen, we do not know when Eichmann added entries to Pankonen's billing statement. This case underscores the importance of Iowa Court Rule 45.7(4). Had Eichmann contemporaneously notified Pankonen in writing of the amount and purpose of the withdrawals and provided regular accountings, this disciplinary matter could have been avoided. Instead, as Eichmann admitted at the evidentiary hearing, she did not provide Pankonen with written notice of billings nor a complete accounting "[b]ecause [Pankonen] had the information," she "knew there was something going on by this," and she "did not trust him at

all." Regardless of any trust issues Eichmann may have had with her client, the rules required her to provide him written notice upon withdrawals of fees or expenses and a complete accounting. Her failure to do so violated rule 45.7(4).

Given that rule 32:1.15(f) "requires an attorney to abide by the Iowa Court Rules in maintaining their client trust accounts," *Weiland*, 885 N.W.2d at 207, Eichmann violated rule 32:1.15(f) based on the above-described violation of three Iowa Court Rules.

The Board proved that Eichmann violated rule 45.2(3)(a)(4) and (5), rule 45.7(4), and rule 32:1.15(f).

**C. Promptly Delivering Client Funds and Rendering a Full Accounting of Client Trust Account.** Before determining the appropriate sanction in this case, there are two more rule violations alleged by the Board that we must address: Iowa Rule of Professional Conduct 32:1.15(d) and Iowa Court Rule 45.2(2). The commission found that the Board failed to prove a violation of these rules. We disagree.

Iowa Rule of Professional Conduct 32:1.15(d) provides: "[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." *See also Boles*, 808 N.W.2d at 439 (agreeing with the commission that an attorney violated rule 32:1.15(d) where the attorney "took seventeen months and ignored numerous refund requests before refunding" client funds). Iowa Court Rule 45.2(2) includes the same requirements: "*Accounting and returning funds or property.* . . . A lawyer must promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and must promptly render a full accounting regarding such property."

The Board focuses on the "render a full accounting" language in rule 32:1.15(d) and 45.2(2), asserting that Eichmann violated these rules by failing to respond to Pankonen's repeated requests for an accounting of the funds remaining in his trust account. The Board relies on three cases: *Iowa Supreme Court Attorney Disciplinary Board v. Weiland*, 885 N.W.2d at 207 (finding a violation of rule 32:1.15(d) and rule 45.2(2) because the attorney failed to promptly refund a client's payment toward the retainer fee after the client terminated the attorney–client relationship and requested a refund); *Iowa Supreme Court Attorney Disciplinary Board v. Netti*, 797 N.W.2d 591, 602–03 (Iowa 2011) (finding a violation of rule 32:1.15(d) and rule 45.2(2) because, among other things, the attorney failed "to account for the retainer when asked to do so" and explaining that "when requested, the attorney should give his or her client an accounting of the property the attorney is holding for the client"); and *Iowa Supreme Court Attorney Disciplinary Board v. Earley*, 774 N.W.2d 301, 307–08 (Iowa 2009) (finding a violation of rule 32:1.15(d) because the attorney "refused to return client files upon request" in three different client matters, "failed to keep his clients informed with regard to money entrusted to him and to account for or return client money from retainer fees or settlement proceeds," and misappropriated client funds).

Eichmann, on the other hand, focuses on the "entitled to receive" language in rule 32:1.15(d) and 45.2(2), asserting that the Board failed to prove, or even argue, that Pankonen was entitled to receive the funds remaining in the trust account in light of her billings that exceeded that balance. Eichmann relies on three different cases: *Iowa Supreme Court Attorney Disciplinary Board v. Hier*, 937 N.W.2d at 316 (finding no violation of rule 32:1.15(d) and rule 45.2(2) for failing to return disputed funds received from opposing counsel related to a failed

settlement agreement because the "dispute merely required [the attorney] to place the funds in her [client trust account]" pursuant to rule 32:1.15(e)); *Iowa Supreme Court Attorney Disciplinary Board v. Baldwin*, 857 N.W.2d 195, 210 (Iowa 2014) (finding a violation of rule 32:1.15(d) because the attorney, among other things, withdrew "funds he had not yet earned from the trust account," failed "to subsequently return th[ose] funds to [the client]," and failed to provide the client "with an itemized bill, or any sort of accounting, despite repeated requests that he do so"); and *Iowa Supreme Court Attorney Disciplinary Board v. Boles*, 808 N.W.2d at 439 (finding a violation of rule 32:1.15(d) because the attorney failed to promptly return unearned fees to clients despite numerous refund requests).

Eichmann agreed there was a dispute over the $2,715.82 remaining in the client trust account, marking those funds as "disputed," which is what she was required to do pursuant to rule 32:1.15(e). *See Hier*, 937 N.W.2d at 316 ("While [opposing counsel] had demanded Hier return the full $750, their dispute merely required Hier to place the funds in her CTA."). The commission found, and the Board does not dispute, that as of September 2021, the amount Pankonen owed to Eichmann for earned attorney fees exceeded that balance. So we agree that Eichmann had a colorable future claim to the funds remaining in the client trust account. *See Morse*, 887 N.W.2d at 146 ("We consider whether the attorney has a colorable claim to the fees. . . . Here, Morse clearly had a colorable present claim to the [fees]—he was owed more than that in past-due legal fees."). Given the dispute over the funds remaining in the client trust account, neither Pankonen nor Eichmann was "entitled to receive" those funds. The proper course of action was to keep the funds separate in the client trust account until the dispute was resolved. As discussed above, Eichmann's subsequent action of

unilaterally withdrawing the remaining funds to pay herself before the dispute was resolved violated other ethics rules.

That Pankonen was not "entitled to receive" the funds remaining in the client trust account does not end our analysis. Rules 32:1.15(d) and 45.2(2) have two requirements when an attorney "receiv[es] funds or other property in which a client or third person has an interest," Iowa R. of Prof'l Conduct 32:1.15(d), i.e., receives funds required to be held in trust. An attorney must return any funds the client or third party is entitled to receive, and they must—upon request, as Pankonen did here—provide an accounting of the funds being held in trust. *Id.* ("[A]lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive *and*, upon request by the client or third person, shall promptly render a full accounting regarding such property." (emphasis added)); *see also Att'y Grievance Comm'n of Md. v. Kum,* 102 A.3d 777, 784 (Md. 2014) ("Respondent violated MLRPC 1.15(d) by not delivering promptly to Mr. Miller the balance of the funds to which he was entitled, *and* by failing upon Mr. Miller's request to render promptly a full accounting of the balance of the settlement proceeds." (emphasis added)). Otherwise, how does the client know if he is entitled to receive any of the funds held in trust? *See Brussow v. Utah State Bar* (*In re Discipline of Brussow*), 286 P.3d 1246, 1251 (Utah 2012) ("Although Mr. Brussow asserts that [his client] still owes him for services performed on her behalf, because Mr. Brussow received an advance retainer and subsequent payments from [the client] and did not send billing statements showing whether these payments had been earned, it is not clear whether Mr. Brussow has earned all the fees that he received from [the client]. Accordingly, rule 1.15(d) applies to [the client's] request

for an accounting. And because Mr. Brussow did not provide Ms. Langley with an accounting upon her request, we conclude that he violated rule 1.15(d).").

Pankonen paid Eichmann a $5,000.00 retainer, made additional payments of $7,000.00 throughout the representation, and agreed that Eichmann could take $14,000.00 from his share of the marital property proceeds. Eichmann placed the $5,000.00 retainer, one payment of $1,000.00 received from Pankonen, and the $40,185.13 proceeds from the marital property—$21,093.00 of which was Pankonen's—into her trust account. Without billing statements or an accounting of the funds held in trust, Pankonen could not confirm whether he was entitled to the return of any of the funds held in trust. Eichmann "failed to keep [Pankonen] informed with regard to money entrusted to [her] and to account for . . . client money from retainer fees or settlement proceeds." *Earley*, 774 N.W.2d at 307–08. Upon Pankonen's numerous requests, Eichmann was obligated to give him an accounting of the funds that she was holding in the client trust account to confirm that Pankonen was not in fact entitled to any remaining funds. *See Netti*, 797 N.W.2d at 602–03; *Brussow*, 286 P.3d at 1251.

Thus, we disagree with the commission's conclusion that rule 32:1.15(d) and rule 45.2(2) were not violated merely because Eichmann was owed more than remained in the trust account. That fact may affect the sanction. *See Brussow*, 286 P.3d at 1251 (imposing private admonition for failing to provide accounting in violation of Utah's version of rule 32:1.15(d) where the client was not entitled to the return of any funds and therefore was not harmed). But the Board proved that Eichmann violated rule 32:1.15(d) and rule 45.2(2) when she failed to account for the funds held in the trust account.

**D. Recommendation for Sanctions.** The Board asks us to impose a thirty-day suspension as recommended by the commission. Eichmann argues that her conduct did not violate any ethics rules and asks for no sanction. Alternatively, Eichmann asserts that the only appropriate sanction is a private admonition. The attorney misconduct in this case centers on client trust account recordkeeping and notice violations.

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 435 (Iowa 2014) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007)). To determine the appropriate sanction, we consider several factors, such as:

> [t]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 152 (Iowa 2018) (alteration in original) (quoting *Morse*, 887 N.W.2d at 143). "While '[t]here is no standard sanction for a particular type of misconduct,' this court 'seek[s] a degree of consistency in our disciplinary cases with respect to sanctions.' So, our analysis is guided by previous cases dealing with similar trust account violations." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Yang*, 6 N.W.3d 312, 322 (Iowa 2024) (alterations in original) (citation omitted) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Heggen*, 981 N.W.2d 701, 713 (Iowa 2022)).

Sanctions for trust account violations range anywhere from a public reprimand to license revocation. *Id. Iowa Supreme Court Attorney Disciplinary Board v. Sobel*, 779 N.W.2d 782, 784–86 (Iowa 2010), involved advice given by

an attorney to the owners of a Thai grocery store to plead guilty to criminal charges related to the sale of game fish from their store. We concluded that the Board failed to prove the charged rule violations concerning alleged misrepresentations about the plea deal that formed the basis for the complaint by the clients. *Id.* at 787–89. But we did conclude that the attorney violated the predecessor rule to Iowa Court Rule 45.7(4) (notification upon withdrawal of fee or expense) where he provided only oral, but not written, notice and accounting for fees withdrawn from the clients' retainer. *Id.* at 789. We imposed a public reprimand for this single rule violation. *Id.* Likewise, in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Apland*, 577 N.W.2d 50, 59–60 (Iowa 1998), we imposed a public reprimand for the attorney's failure to provide the client with a requested accounting. We explained "that the prudent lawyer will reduce an advance fee payment agreement to writing, spelling out its purpose, at what intervals the lawyer may withdraw a portion of the fee, and at what intervals the lawyer will render an accounting" and that the attorney's "lackadaisical bookkeeping practices served only to compound his problems." *Id.*

"By contrast, 'when an attorney has committed multiple or more systematic trust account violations, we have imposed suspensions, often of thirty days.'" *Hier*, 937 N.W.2d at 318 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 551 (Iowa 2015)); *see also Yang*, 6 N.W.3d at 323 (explaining that we have imposed a thirty-day suspension when the attorney "had significant ongoing problems with conforming his trust account practices to the requirements of the rules"); *Morse*, 887 N.W.2d at 146 (imposing a thirty-day suspension as "appropriate . . . to discourage lawyers from misdirecting funds entrusted to them for a special purpose" in a case where an attorney applied funds intended to pay for the transcript required for an appeal to his

own fees). We have revoked an attorney's license to practice law when an attorney has committed theft by converting client funds without any colorable future claim to the funds. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 231–34 (Iowa 2014).

As noted, the nature of Eichmann's misconduct centers on trust account recordkeeping and notice violations. Specifically, Eichmann's violations relate to failure to communicate with Pankonen about billings and accountings, failure to maintain required documentation of billings and accountings, failure to withdraw from representation after termination and appearance by Pankonen's successor counsel, and unilaterally withdrawing disputed funds from her client trust account to pay herself. Yet, the Board does not dispute that Eichmann's billings—which are not challenged as excessive—exceeded the balance remaining in the trust account, such that had she properly addressed the dispute, she would have been entitled to the funds.

Starting with mitigating factors, Eichmann's professional commitment and public service are mitigating factors. Following a clerkship with the Second Judicial District, Eichmann worked at Iowa Legal Aid for seven years before transitioning into private practice. She fought for and received a federal grant under the Violence Against Women Act to handle emergency cases of domestic violence for restraining orders and contempt actions. Since transitioning into private practice, she has accepted many cases through the Polk County Bar Association Volunteer Lawyers Project as well as court appointments by district court judges. Eichmann also admitted as exhibits during the hearing letters from five local judges, each expressing their opinion of her as professional and well prepared.

That said, we disagree with the commission that Eichmann has fully recognized her wrongdoing and accepted responsibility. Much of Eichmann's briefing and testimony at the evidentiary hearing focused on shifting blame to her client and to the Office of Professional Regulation. A difficult client does not excuse an attorney from complying with our rules of professional conduct. We therefore view Eichmann's responses throughout this disciplinary matter as more of an aggravating factor.

Eichmann's substantial experience in the practice of law and pattern of attorney misconduct are aggravating factors. *See Morse*, 887 N.W.2d at 144. We reiterate that although prior private admonishments are not considered discipline, they are considered an aggravating factor. *See id.* (collecting cases and explaining that private admonitions "provide notice of deficiencies in regards to particular ethical requirements by attorneys" (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194 (Iowa 2015))). This is especially true where, as here, an attorney has been admonished for behavior similar to later charges of misconduct.

Eichmann was privately admonished in 2008 for failure to comply with Iowa Rule of Professional Conduct 32:1.15(f) and Iowa Court Rule 45.7(4) based on inadequate accountings provided to a client. In 2011 and again in 2018, Eichmann was privately admonished for failure to comply with Iowa Rule of Professional Conduct 32:1.3 based on her failure to act with reasonable diligence. And most recently, in 2020, Eichmann was privately admonished for failure to comply with Iowa Rules of Professional Conduct 32:1.4(a) and 32:1.15(d) and Iowa Court Rule 45.7(4). Eichmann's 2008 and 2020 private admonishments describe strikingly similar client experiences and attorney

misconduct to that at issue in this matter. We find particularly troublesome that the 2020 private admonishment provided Eichmann with a stern warning:

> [T]he Board is concerned by your evasive and inconsistent responses in its investigation of this matter. . . .
>
> Had you been more responsive and forthcoming, this matter could have been resolved much sooner and [the client] would have received the items to which she was entitled in a timely manner. The Board cautions you to review your obligations under Iowa R. [of] Prof'l Conduct 32:8.1(b) (Disciplinary Matters). *See also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Goedken*, 939 N.W.2d 97, 110 (Iowa 2020) (finding attorney's "flippant attitude toward the Board and the commission" to be an aggravating factor). Be advised that the Board expects your full cooperation in any future matters.

(Footnote omitted.) Despite that stern warning in 2020, Eichmann committed similar rule violations throughout her representation of Pankonen—which was contemporaneous with this admonition. And when the Board served discovery requests on Eichmann for this disciplinary action, Eichmann did not timely respond, requiring the Board to file a motion to compel—actions that parallel her responses that led to the 2020 private admonition.

Yet, we agree with Eichmann that the client harm in this matter, i.e., Pankonen not being apprised of his bill for legal fees and expenses due to Eichmann's failure to provide written notice to him, is not the type of client harm that supports suspending an attorney's license absent other violations. For example, in *Iowa Supreme Court Attorney Disciplinary Board v. Morse*, an attorney used funds intended to pay for an appeal transcript to cover his past-due fees, resulting in dismissal of the client's appeal for failure to prosecute. 887 N.W.2d at 135–38. Here, while Pankonen was clearly frustrated by Eichmann's failures to communicate with him about her billing, that frustration does not warrant suspending Eichmann's license under the circumstances of this case.

Finally, we note that the Board has not alleged that Eichmann violated any ethical rules related to the substance of her representation of Pankonen in his dissolution of marriage proceedings. Eichmann had a colorable future claim to the funds remaining in the client trust account. And she has never previously been publicly reprimanded. But Eichmann's attitude toward her former client and her prior, similar admonitions require formal discipline. While we recognize that the commission's recommendation for a thirty-day suspension is not without support, we conclude that a public reprimand is the appropriate sanction.

## IV. Conclusion.

We publicly reprimand Eichmann for failing to comply with Iowa Rules of Professional Conduct 32:1.4(a)(4), 32:1.15(d), 32:1.15(e), 32:1.15(f), 32:1.16(a)(3), and Iowa Court Rules 45.2(2), 45.2(3)(a)(4), 45.2(3)(a)(5), and 45.7(4). All costs of this proceeding are assessed against Eichmann under Iowa Court Rule 36.24(1).

**Attorney Reprimanded.**